■ SCC Associates, Respondent, v Manufacturers and Traders Trust Company, Defendant and Third-Party Plaintiff-Appellant. City of Saratoga Springs, Third-Party Defendant and Fourth-Party Plaintiff-Appellant; McGinn Smith & Company, Inc., et al., Fourth-Party Defendants-Respondents. [780 NYS2d 445]—

Peters, J. Appeals (1) from an order of the Supreme Court (Benza, J.), entered June 16, 2003 in Albany County, which, inter alia, denied the motions of defendant and third-party defendant to vacate a prior order of the court setting aside a verdict in favor of defendant, and (2) from the judgment entered upon the prior order.

Plaintiff, SCC Associates, and third-party defendant, City of Saratoga Springs, entered into an agreement whereby plaintiff would, among other things, construct the Saratoga City Center (hereinafter Center) in the City of Saratoga Springs, Saratoga County, and then lease the Center to the City. The City was obligated to pay rent in monthly installments and had the option to purchase the Center during a set period.

To finance plaintiff's acquisition and construction of the City Center, the County of Saratoga Industrial Development Agency issued treasury bonds with varying maturity dates. These bonds were delivered to defendant[1] as custodian; it collected the proceeds of the bonds, transferred those proceeds to itself as trustee and then deposited them into a bond fund. These funds were used to make the rental payments due from the City and such payments were credited to a "principal and interest" (hereinafter P&I) account.

The City exercised its option to purchase the Center and a timely closing was held. At the City's request, defendant sent the City a statement detailing the amounts remaining in the bond fund after the closing, including the P&I account. Shortly thereafter, the City asked defendant to pay it the remaining amounts, including $222,754.75 in the P&I account. Defendant complied with the City's request without seeking confirmation or authorization from plaintiff. Plaintiff later learned of such transfer and sought a return of such funds by letter to the City in which it explained that it had "mistakenly directed the City . . . to withdraw all remaining funds from our . . . (P&I) account . . . at the end of the financing." When the City, and later defendant, refused reimbursement, plaintiff commenced this action.[2]

At trial, plaintiff introduced the bond agreement, emphasizing that section 4.06 of the agreement, entitled "Repayment to [plaintiff] from the Bond Fund," obligated defendant to pay plaintiff all amounts remaining in the P&I account after payment of the bonds and related expenses. Defendant countered with testimony from a City employee to the effect that plaintiff had continued to represent throughout the closing that the remaining funds in the P&I account would be paid to the City. Defendant buttressed its position with the letter from plaintiff

---

**1.** Defendant is a successor in interest to the Union National Bank, which was the original trustee.

**2.** Defendant commenced a third-party action against the City and the City commenced a fourth-party action against both plaintiff and McGinn, Smith & Company, Inc., the entity that formed plaintiff for purposes of this project.

acknowledging its mistake, as well as wire transfer instructions sent to defendant before the closing which were signed by both plaintiff and the City. At the close of evidence, the parties agreed that if the jury found in favor of plaintiff, damages were to be set in the amount transferred from the P&I account—$222,754.75.

By a special verdict sheet proffered by Supreme Court without objection, the jury was asked whether the funds remaining in the P&I account after the closing belonged to plaintiff, whether there was a contract between plaintiff and defendant requiring defendant to pay plaintiff all amounts remaining after the closing and, if so, whether defendant breached that contract. It was further asked to determine whether there was a fiduciary relationship between plaintiff and defendant and whether there was a violation of that relationship. When assessing whether there was a breach of this relationship, the jurors were instructed that if they found "that plaintiff . . . authorized or otherwise consented to . . . defendant . . . turning over the funds of the [P&I] account to the [C]ity . . . , you must find for . . . defendant . . . , even if plaintiff subsequently changed it's (*sic*) mind after the fund had been turned over." The last question asked the jurors to detail "what damages were sustained by plaintiff," followed by a blank line. This question, in light of Supreme Court's previous instruction that if damages were to be awarded, it must be in the amount set by the court, caused the jury to request clarification.[3]

The jury found that the funds remaining in the P&I account belonged to plaintiff and that, despite a contract requiring defendant to pay plaintiff those funds, there was no breach of contract. However, it then found both the existence of a fiduciary duty and a breach thereof, but made no award for damages. Plaintiff moved for a judgment notwithstanding the verdict and Supreme Court granted the motion. The City and defendant appeal.

A trial court may set aside a verdict as a matter of law pursuant to CPLR 4404 (a) if it " 'conclude[s] that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial' " (*Tel Oil Co. v City of Schenectady*, 303 AD2d 868, 870 [2003], quoting *Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). To set aside the verdict as against the weight of the evidence, it must find that " 'the evidence so preponderate[d] in favor of the

---

3. Supreme Court later acknowledged that it should not have included this question.

[movant] that [the verdict] could not have been reached on any fair interpretation of the evidence' " (*Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995], quoting *Moffatt v Moffatt*, 86 AD2d 864 [1982], *affd* 62 NY2d 875 [1984]; *see Pyptiuk v Kramer*, 295 AD2d 768, 770 [2002]). Under either standard, we find that Supreme Court's decision setting aside the verdict was proper. There is no dispute that the parties stipulated to the amount remaining in the P&I account and agreed that if the jury determined that plaintiff was entitled to an award, the damages were to be set in that amount. While the jury's confusion regarding damages was evident by its request for a clarification once it found that there was a breach of a fiduciary duty to plaintiff, the jury was required, as a matter of law, to award the stipulated amount of damages to plaintiff (*see* CPLR 4404 [a]). The verdict was also against the weight of the evidence since the record established that the evidence so preponderated in favor of plaintiff that the verdict could not have been reached on any fair interpretation of the evidence (*see Keleher v Fox Ford of Victor*, 267 AD2d 646, 647 [1999]; *Rougeux v Henriksen*, 195 AD2d 742, 743 [1993]).

Cardona, P.J., Crew III, Mugglin and Rose, JJ., concur. Ordered that the order and judgment are affirmed, with costs.